COOPER and another, Respondents, vs. REILLY, Appellant.

*May 17 — June 20, 1895.*

*Equity: Setting aside conveyance of land: Fraud: Undue influence: Inadequate consideration: Evidence: Burden of proof.*

1. If there was no fiduciary relation between the parties to a conveyance of land, the burden of proof in an action to set aside the conveyance on the ground of fraud and undue influence is upon the plaintiff.
2. Where both parties had an equal opportunity to know the value of the land, even a great disparity between such value and the price paid is not evidence of fraud; and the mere inadequacy of consideration, not coupled with other circumstances, such as weakness of mind, a fiduciary relation, pecuniary distress, or the like, is not a ground for setting aside the conveyance.
3. A married woman, having one child, conveyed to her brother her interest in the farm which had belonged to their deceased father. It appeared that she was a woman of rather unusual independence of judgment; that she was living with her husband and under his influence and the influences of her home; and that her relations with the grantee were not cordial or confidential. She was, at the time, ill with consumption, of which she died about three months later, but there was nothing but doubtful inference, not clearly supported by facts, from the condition of her health to show that her judgment was in any way disturbed or her natural affections clouded or perverted; and it was not shown that the grantee, at the time, had any opportunity of acquiring an influence over her. *Held,* that a finding that the conveyance was procured by undue influence was not sustained by the evidence.

APPEAL from a judgment of the circuit court for Walworth county: D. H. JOHNSON, Judge. *Reversed.*

This is an action brought by the surviving husband and infant daughter of one Mary A. Cooper, deceased, to set aside a conveyance of an interest in certain lands, on the grounds of fraud and undue influence.

The lands comprised a farm of about seventy-five acres, on the shore of Lake Geneva in Walworth county. They

were formerly the home farm of one Phelix O'Reilly. Phelix O'Reilly had a family of four children,— James, *Thomas*, Phelix, Jr., and Mary. In 1873 the father was considerably in debt. The sons advanced money to pay the debt, and the farm was conveyed to James, by a trust deed, in trust for the said four children, and a life lease back to the father. The three sons had left home and were residing in the far west, while Mary was residing on the farm with her parents. It was so arranged that the son Phelix took the active management of the farm, and the other sons returned to the west. The management of the farm by Phelix was not successful. Large debts accumulated against it. In 1884, *Thomas* returned and took charge, under arrangement of the family. He again paid off the debt, and made valuable improvements, including a large family residence. The father died in 1885; the mother in 1888. Mary married in 1884 a husband who lived less than two years, and in 1886 married the plaintiff *Harvey Cooper*, and bore to him the child *Ida Cooper*, his coplaintiff. In the meantime the value of the farm had largely enhanced by reason of its situation on the shore of Lake Geneva and the increased demand for property so situated for summer residences.

On July 2, 1888, Mary went with her brothers James and *Thomas* (the defendant) and her husband and child to Lake Geneva. While there she left her husband and child at the hotel, and went out with her brothers, explaining to her husband that she was going out "to attend to a family matter." She went with her brothers to a conveyancer, and James and Mary conveyed to *Thomas* each their interest in the farm. The consideration expressed in Mary's deed was the sum of $250, of which receipt is acknowledged. It is uncertain whether she actually received this money. The transaction is entirely unexplained by testimony from the plaintiffs' side, while the defendant explains it as being in

the fulfilment of a family arrangement, made in those early years when he assumed the debts and made the improvements, whereby he was to own the whole farm, and Mary was to convey to him on his payment to her of $1,000, which he claims to have considerably overpaid before the execution of the deed. At this time Mary was sick of consumption, of which disease she died, October 7, 1888, about three months after the execution of the deed. She was, at the time, living with her husband and was apparently not on friendly terms with *Thomas*, although about a month later she went to his house to live, and remained there until her death.

The evidence is voluminous. The printed case covers nearly 1,000 folios. It would not be profitable to state it at greater length.

The circuit court found for the plaintiffs, and adjudged that the deed be set aside. From that judgment the defendant appeals.

For the appellant there was a brief by *D. B. Barnes*, attorney, and *Spooner, Sanborn, Kerr & Spooner*, of counsel, and oral argument by *J. B. Kerr, D. B. Barnes*, and *A. L. Sanborn*.

For the respondents there was a brief by *John B. Simmons* and *Wallace Ingalls*, attorneys, and *Quarles, Spence & Quarles*, of counsel, and oral argument by *Mr. Ingalls* and *Mr. T. W. Spence*. They contended, *inter alia*, that the gross inadequacy of the price paid, even in the absence of all other circumstances, appeals strongly for equitable relief, being considered a species of fraud itself. *Chesterfield v. Janssen*, 2 Ves. Sr. 154; *Underhill v. Horwood*, 10 Ves. 209, 219; 2 Pomeroy, Eq. Jur. §§ 927, 928 and note; Kerr, Fraud & M. 187, 189; *Byers v. Surget*, 19 How. 303; *Morriso v. Philliber*, 30 Mo. 145; *Hall v. Perkins*, 3 Wend. 626; *Phillips v. Pullen*, 16 Atl. Rep. 9; 10 Am. & Eng. Ency. of Law, 329, 330, and cases cited in notes; *Nott v.*

*Hill,* 2 Ch. Cas. 120; *O'Rorke v. Bolingbroke,* 21 Moak's Eng. 68 and note; *Burrows v. Lock,* 10 Ves. 470, 474; *Whalley v. Whalley,* 1 Meriv. 436; *Butler v. Miller,* Ir. Rep. 1 Eq. 194; 1 Madd. Ch. 269; *Stilwell v. Wilkins,* Jac. 280, 282; *Butler v. Haskell,* 4 Desau. Eq. 651.   When the accompanying circumstances are inequitable and show bad faith or undue influence, concealment, misrepresentations, imposition, or undue advantage on the part of the one benefited, or ignorance, weakness of mind, sickness, incapacity, necessity, or the like on the part of the other, these circumstances, *combined with inadequacy of price,* may easily induce a court to grant relief.   When these circumstances co-exist, the fraudulent character of the transaction is *inferred* as a conclusion of law, *without any direct proof of fraud.*   2 Pomeroy, Eq. Jur. §§ 928 and notes, 947, 948, 951, 956; 10 Am. & Eng. Ency. of Law, 327; *Kelly's Heirs v. McGuire,* 15 Ark. 555; *White v. White,* 89 Ill. 460; *Willcox v. Jackson,* 51 Iowa, 208; *Butler v. Duncan,* 47 Mich. 94; *Brown v. Hall,* 14 R. I. 249, 51 Am. Rep. 375; *Gifford v. Thorn,* 9 N. J. Eq. 702; *Calloway v. Witherspoon,* 5 Ired. Eq. 128; *Chesterfield v. Janssen,* 2 Ves. Sr. 124; *Juzan v. Toulmin,* 9 Ala. 662, 44 Am. Dec. 448; *Hall v. Perkins,* 3 Wend. 626; Kerr, Fraud & M. 188; *Billage v. Southee,* 9 Hare, 534, 540.   The jurisdiction on this ground applies to transactions between persons occupying relations of trust and confidence, and also to all near relatives.   Story, Eq. Jur. § 310; Kerr, Fraud & M. 183–194; 2 Pomeroy, Eq. Jur. § 963 and notes; *Sears v. Shafer,* 6 N. Y. 268; *Woodbury v. Woodbury,* 141 Mass. 329, 55 Am. Rep. 479; *Boyd v. De La Montagnie,* 73 N. Y. 498; *Darlington's Appeal,* 27 Am. Rep. 726; *Davis v. Dean,* 66 Wis. 100; *Watkins v. Brant,* 46 id. 425; *Nichols v. McCarthy,* 53 Conn. 299; *Cowee v. Cornell,* 75 N. Y. 99; *Green v. Roworth,* 113 id. 462; 8 Am. & Eng. Ency. of Law, 650 and note; 27 id. 457–460; *Smith v. Cuddy,* 96 Mich. 562; *Smith v. Smith,* 60

Wis. 329; *Kelly v. Smith,* 73 id. 191; *Giles v. Hodge,* 74 id. 360; *Leach v. Leach,* 65 id. 284; *Allore v. Jewell,* 94 U. S. 506; *Griffith v. Godey,* 113 id. 89; *Conley v. Nailor,* 118 id. 133. The case at bar presents a combination of nearly all the circumstances calling for the interposition of a court of equity. At the time of the conveyance in question Mrs. Cooper was suffering from bereavement from the recent painful death of her mother, was weak and emaciated from disease, a victim of consumption, without hope of recovery, and, though the relations between her and her husband had been most cordial, the deed was made without his knowledge, the concealment being evidently intentional, and it included the entire patrimony of her infant daughter, while the alleged consideration was but a mere fraction of its value.

NEWMAN, J. The burden is upon the plaintiffs to satisfy the court by evidence that the conveyance was procured by the defendant by means of fraud and undue influence. It is not sufficient that the evidence excites a suspicion, even a strong one, of fraud; for suspicion merely, however strong, is not proof. The evidence fails to disclose any fiduciary relation between the defendant, *Thomas,* and Mrs. Cooper, whereby he owed her any special duty, or such as to cast upon him the burden to show the fairness of the transaction. He was in no legal or other sense a trustee for her. Nor is any actual relation shown between them such as was adapted to lead her especially to confide in him.

There is, in the whole case, no direct evidence either of fraud or undue influence. Many, perhaps most, of the circumstances from which fraud is sought to be inferred are as fairly susceptible of explanation upon a theory of honesty as on a theory of deceit. The strongest circumstance in the case — very nearly the only one — upon which the theory of fraud is urged is what is claimed to be the inadequacy of

consideration. But even a great disparity between the value and the price paid is no evidence of fraud where both parties have an equal opportunity to know the value. *Wood v. Boynton*, 64 Wis. 265, 272, and cases cited; *Prince v. Overholser*, 75 Wis. 646; *Mosher v. Post*, 89 Wis. 602. Unless inadequacy of consideration is coupled with some other circumstance, such as weakness of mind, a fiduciary relation, pecuniary distress, or the like, it is no ground for setting aside a sale. *Wood v. Boynton, supra.*

Mrs. Cooper had lived upon this farm, and in its neighborhood, all her life. It may fairly be assumed that she knew that the value of the property had been enhanced by the reason that property so situated was sought for for summer residences. There is no evidence of representation or misrepresentation or suppression of truth as to its value; nor that the conveyance was solicited even. There is no evidence of a lack of knowledge on the part of Mrs. Cooper, either of the value of the property or the amount of her interest in it; no evidence of a lack of mental capacity to understand and appreciate her rights in the property or her relation and duty to her own family. There was no confidential relation, no pecuniary distress. There is nothing but doubtful inference, not clearly supported by facts, from the condition of her health, to show that her judgment was in any way disturbed or her natural affections clouded or perverted. She is represented to have been a woman of rather unusual independence of judgment and decision.

The case is equally barren of evidence tending to show undue influence. Mrs. Cooper was living with her husband, not in the immediate neighborhood of her brother's residence. So far as appears, her relations with her husband were normal. She was in the full enjoyment of the society and support of her husband, and under his influence and the influences of her own home. Her relations with her brother *Thomas*, the defendant, if not that of partial estrangement,

Cooper and another vs. Reilly.

were certainly not cordial nor confidential. Nor is it shown that he, at that time, had any opportunity of acquiring an influence over her, by any association or communication which he had with her. This situation and these circumstances are not very persuasive evidence of undue influence exerted by him over her. They do not seem to give a satisfactory explanation of the reason or motive which induced her to give away her own patrimony and the inheritance of her child. A mother's solicitude for the welfare of her child is not so readily diverted.

It certainly seems more in accord with reason to find the motive for the execution of this conveyance in some earlier family arrangement, of which, perhaps, a hint is given in her explanation to her husband that she was going out "to attend to a family matter," than to denounce it as the product of fraud and dark design. This view accords with the defendant's explanation of how it came about. It is impossible to reconcile perfectly all the testimony with either theory of the case. In respect of some collateral facts the case of the defendant seems to be in a measure discredited. This is also true of the plaintiffs' case. For instance, it is not easy to realize that in her happy and confidential relation with her husband, and considering the condition of her health and her expectations in regard to its result, she withheld all information and explanation of the transaction from him. This is, indeed, unnatural and surprising. But it is only a collateral fact, like the defendant's bookkeeping. As to the main or central facts, the effect of the whole testimony seems rather to corroborate the defendant's explanation. And, since the burden of proof is upon the plaintiffs, it must be held that the evidence does not support the finding in their favor.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to dismiss the complaint.