178

Przybylski and others, Respondents, vs. Von Berg and others, Appellants.

*December 8, 1932—April 11, 1933.*

For the appellants Von Berg, State Bank of Mosinee, Schwenker, and Pudelka there was a brief by *Genrich & Genrich* of Wausau, and oral argument by *Fred W. Genrich*.

For the respondents there was a brief by *A. H. Eberlein* of Wausau and *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner*.

ROSENBERRY, C. J.   There are two possible grounds upon which the determination of the trial court may be supported: (a) that the consideration given by the State Bank of Mosinee in proportion to the benefits received by it was so inadequate as to raise a presumption of fraud or wrong-doing on the part of the defendant bank, or, in the classical phrase, "The consideration was so inadequate as to shock the conscience of the chancellor;" or (b) that in accepting and retaining the benefits of the transaction after it had knowledge of the fraudulent conduct of the agents of the plaintiffs, Skala and Pudelka, the defendant bank ratified the acts of Skala and Pudelka and adopted the fraud.

This case in its facts is unusual if not unique.  It is not claimed by any one that the defendant bank or its cashier, the defendant Von Berg, was guilty of any fraudulent conduct either by way of representations or by way of concealment.  As between the parties to the transaction, no value was placed by either party upon its own property.  The plaintiffs valued the Cater farm unaided in any way by the defendant bank.  The defendant bank procured the appraisal of the property owned by the plaintiffs by a Chicago bank and in no way relied upon any value stated by the plaintiffs. The properties were traded on an even basis, the plaintiffs giving back a mortgage to secure the payment of $2,850, being the difference between $8,594 and the amount of the real-estate mortgage, in consideration of which the plaintiffs

received the personal property and the crops then on the farm. The plaintiffs, as found by the court, relied upon the representations made by their agents that the Cater farm was worth $25,000. Had such representations been true, plaintiffs would have made a large profit in the transaction.

Briefly stated, the situation is this : relying upon the statement made by their own agents that the Cater farm was worth $25,000, the plaintiffs proposed to the defendant bank an exchange of properties, which, as now appears, resulted in a large loss to the plaintiffs. The appraised value of the Chicago property was $13,800 clear value, there were mortgages and liens amounting to $6,600, leaving the value of the plaintiffs' equity $7,200. The defendant bank gave, as found by the trial court, an equity in the farm worth $3,035.50. It is true that the trial court found the Chicago property to be worth $20,300, but there is no evidence that at the time of the transaction Von Berg or the defendant bank had any reason to suppose that the Chicago property was worth more than the amount at which it was appraised by the Chicago bank. While the court in its findings said that the circumstances and values were such that the defendant bank knew or ought to have known of the misconduct of plaintiffs' agents, there are no "circumstances" as distinguished from "values" which should have aroused the defendant bank's suspicions unless it might be the fact that the plaintiffs were dealing with the aid of an agent rather than by themselves, a circumstance which ordinarily at least would repel rather than support such an inference.

With this analysis of the facts, we proceed to a consideration of the legal consequences of inadequate consideration. The rule is well settled that where the parties to a transaction were both in a situation to form an independent judg-

ment concerning the transaction and acted knowingly and intentionally, mere inadequacy in the price or in the subject matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject matter, courts of equity should not and will not interfere with such valuation. 2 Pomeroy, Eq. Jur. (4th ed.) p. 1936, § 926, and cases cited.

In *Cooper v. Reilly,* 90 Wis. 427, 63 N. W. 885, plaintiff's intestate had a one-quarter interest in seventy-five acres of land on the shore of Lake Geneva. Shortly prior to her death, plaintiff's intestate conveyed her interest in the property to her brother for $250. This was the acknowledged consideration although there appears to be some doubt as to whether she actually received the money. It was conceded that the farm was a valuable one by reason of the increased demand for property of that character for summer residences. The court found that there was no direct evidence either of fraud or undue influence. The trial court set aside the conveyance on the ground that the consideration was inadequate. In reversing the judgment this court said:

"The strongest circumstance in the case—very nearly the only one—upon which the theory of fraud is urged is what is claimed to be the inadequacy of consideration. But even a great disparity between the value and the price paid is no evidence of fraud where both parties have an equal opportunity to know the value. (Citing cases.) Unless inadequacy of consideration is coupled with some other circumstance, such as weakness of mind, a fiduciary relation, pecuniary distress, or the like, it is no ground for setting aside a sale."

In the case at bar, as already stated, no "other circumstance" appears. Therefore the plaintiffs do not bring them-

selves within the rule stated by Mr. Pomeroy, which is supported by a great array of authority, or within the rule laid down by this court.

There are some cases in which gross inadequacy of consideration unaccompanied by other inequitable incidents has been held to be sufficient evidence of fraud to warrant avoiding the transaction. In these cases it is ordinarily said that inadequacy of price so gross that it shocks the conscience furnishes decisive evidence of fraud. Of such cases *Graffam v. Burgess,* 117 U. S. 181, 6 Sup. Ct. 686; *Hough's Adm'rs v. Hunt,* 2 Ohio, 506; *Juzan v. Toulmin,* 9 Ala. 662; *Eyre v. Potter,* 15 How. (U. S.) 42, and *Marker v. Van Gerpen,* 39 S. Dak. 648, 166 N. W. 151, are typical. While in a number of the cases relief was denied, statements were made by way of supporting argument in the opinions of the courts to the effect that mere inadequacy of price is sufficient if so gross as to shock the conscience of the court.

An examination of these and other cases shows that the doctrine is not applicable to the situation under consideration in the case at bar for the following reason: if in a transaction between A and B, B procures the title to A's property upon a grossly inadequate consideration, it may be so grossly inadequate as to warrant an inference that B, in some way not disclosed, defrauded A, otherwise A would not have parted with his property. As pointed out by Mr. Pomeroy, the basis of the rule is that the gross inadequacy of consideration warrants an inference of fraud. Fraud being established by inference, equity grants relief in such a case as in other cases of fraud. In all of the cases examined, and we have examined a goodly number, the transaction was between the parties to the action, so that if there was any misconduct it must have been the misconduct of the parties who were benefited. In the case at bar nothing is left to inference. It appears without dispute, and the trial court so found, that the plaintiffs parted with their property by

reason of the false and fraudulent representations made to them by their own agents. This rebuts or repels any inference that the defendant bank or its cashier, Von Berg, was guilty of any fraudulent conduct.

The trial court, however, bases the right of the plaintiffs to recover on a still narrower ground and finds that, by reason of the inadequacy of price, the defendant bank is chargeable with knowledge that third parties had committed a fraud upon the plaintiffs. In the language of the trial court, the bank knew or ought to have known of such misconduct. For this proposition we are cited to no authority and we are unable to find any and we find no adjudicated case where it has ever been so held. The matter is dealt with in the Restatement of the Law of Contracts and the principle enunciated in the restatement extends the right of the plaintiff to recover under such circumstances to the farthest limits supported by authority. Paragraph 477 is as follows:

"Fraud or material misrepresentation by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto

"(a) has reason to know of the fraud or misrepresentation before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction, or

"(b) is affected by the fraud or misrepresentation under the law of Agency or of Trusts."

See, also, 3 Williston, Contracts, p. 2700, § 1518, where the cases are cited.

The only possible basis for a claim that under the facts of this case the defendant bank had reason to know of the fraud or misrepresentations of Skala and Pudelka is denied by *Law v. Grant,* 37 Wis. 548, which was an action to foreclose a mortgage. By way of counterclaim the defendant sought to avoid the transaction and to recover the amount of the purchase price paid, on the ground of misrepresenta-

tions made by a third party. The defendant had agreed to pay $40,000 for a tract of land claimed to be worth only $13,000, relying upon the representations of a third person who claimed he had powers of divination and by the exercise of such power had discovered mineral upon the land. In denying the defendant relief the court said:

"Aside from the mere fact that the plaintiff demanded and received what now seems to have been an exorbitant price for his land, the case seems entirely destitute of evidence tending, even remotely, to prove that the plaintiff then had any knowledge or suspicion that R. S. Law had perpetrated a fraud of any kind upon the defendant."

After holding the evidence insufficient to rebut plaintiff's denial the court continued:

"It frequently happens that the market values of stocks and other kinds of property are temporarily inflated, by means of the grossest frauds, far above intrinsic values. Yet no one will claim that contracts for the sale and purchase thereof at such inflated prices, by parties not concerned in the fraud, can be successfully impeached. This seems to be a case within the same principle. The defendant was made to believe that he knew the value of the land better than did the owner. He acted upon that belief, and bought the land at an exorbitant price. His opinion was based partly upon false assertions of fact made by R. S. Law, and for which the plaintiff was in no manner responsible, but mainly, in our opinion, upon his absurd belief in the powers of Fox. Neither was the plaintiff responsible for that belief, but sold his land for the price the defendant was willing to pay for it. It turns out that the belief of defendant is unsound; that he spent his money and incurred obligations upon the strength of a false theory or doctrine, being incited thereto by the false statements before mentioned. On what principle can a court of equity relieve him from the consequences of his gross folly and want of common discretion and prudence? The question has already been answered. In order to entitle himself to relief, we have seen that he must connect the plaintiff with the alleged fraud by showing that it

was perpetrated by the plaintiff or his agent, or, if by a person not the agent of the plaintiff, that the latter had notice of the fraud at the time of the sale."

In the light of the authorities, "to have reason to know of the fraud or misrepresentation committed by a third person" must refer to a knowledge or reason to know something other than mere inadequacy in the price.

It is further argued that the judgment should be supported on the doctrine laid down in *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837. In that case an agent of the life insurance company, although proper answers were given to him by the insured, filled in false statements in the application for insurance in order to procure the issuance of the policy so that he might receive his commission. The statements made by the insured were truthful, and had they been truthfully recorded no policy of insurance would have been issued on the application. Under such circumstances the court held that the entire transaction should be set aside, as to the insurance company on the ground that the representations made to it in the application, in fact filed with it, were false and fraudulent; as to the insured or his representatives, that had the statements as made by the insured been inserted in the application, the insurance company would have declined to issue the policy. So in no event was the insured entitled to have the policy issued. The circumstances of this case in no way parallel the facts in the *Fletcher Case* nor are the principles applied by the court in that case in any way applicable to the facts in this case. That case is authority for the fact that misconduct of an agent in the negotiation of a contract may result in a *nudum pactum,* binding neither party. The plaintiffs' agent did not mislead the defendant bank. The contract as made bound the bank on any theory of the case, so that the judgment in this case may not be supported on the authority of the *Fletcher Case.*

We shall next examine the proposition that under the law of agency the defendant, having accepted and retained the benefits which came to it by reason of the fraudulent conduct of Skala and Pudelka after it had knowledge of such misconduct, thereby adopted the conduct of Skala and Pudelka and ratified their acts. The principle is stated in the Restatement of the Law of Agency, Proposed Final Draft, sec. 99, as follows:

"*Retention of benefits.* The retention by a purported principal, with knowledge of the facts and before he has changed his position, of something which he is not entitled to retain unless an act purported to be done on his account is affirmed and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such retention he repudiates the act. If he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction."

This principle of agency applies only where there is a purported principal and an act purported to be done on his behalf. It is not necessary that the purported principal have in any way conferred authority or apparent authority upon the person who purports to act for him. A third person having purported to act for the purported principal, the purported principal having accepted the benefits of the transaction, he cannot, after knowledge of all of the facts, retain the benefit without ratifying the act of his purported agent and becoming liable accordingly. This marks the limit of liability for retention of benefits and extends materially the rule of law as it is stated in many cases. The general rule is that stated in this state, that the knowledge must be had before or at the time the transaction is completed.

Applying the law to the facts in this case, the trial court found, and there is no evidence to the contrary, that Skala and Pudelka at all times acted as the agents of the plaintiffs and never at any time in any way purported to act as agents of the defendant bank, so that the retention of the benefits by the bank does not amount to ratification.

It appears that some time in September, 1930, the Przybylski property was disposed of by the bank. The trial court did not find at what time the plaintiffs demanded a rescission of the transaction. Apparently it was after they employed counsel, which was in the month of July, 1931. This fact is material only in respect to the liability of the defendant bank on account of claimed ratification. Where it is sought to charge a purported principal on the ground that he has retained the benefits, the action must be prompt and before the situation of the parties has materially changed; that is, when rescission is demanded, the purported principal must be in a position where he is free to act and not be compelled by circumstances to act in a particular way. Nothing in the evidence indicates that it was ever brought home to the defendant bank or to its cashier, Von Berg, that the transaction was procured by the false and fraudulent conduct of Skala and Pudelka until the commencement of this action. In the absence of such knowledge the defendant bank could not be charged as a purported principal on the theory of retention of benefits. In order to ratify, a purported principal must know what it is that he is expected to ratify. This is an elementary principle of the law of agency.

In its opinion the trial court said: "The situation is not unlike that in *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790, and the principles of that case apply to this." In that case one Ginsberg, who was in fact the paid agent of the defendant Gee and acting for him, assured the plaintiffs that he was well acquainted with real estate in the vicinity of Grand Rapids and that he would give them a good deal, and thereupon by false and fraudulent representations induced the plaintiffs to enter into the transaction which was the subject of the action. The controlling question in *Miranovitz v. Gee* was whether or not the plaintiffs had a right to rely upon the statements made by Ginsberg and whether or not the statements made were statements of opinion or statements of fact. The case at bar would be parallel with

*Miranovitz v. Gee* if Skala and Pudelka had in fact been the agents of the bank. No one claims that they were or even purported to be such agents, hence we are unable to see how the principles laid down in *Miranovitz v. Gee* are in any way controlling in this case. That a gross and unconscionable fraud was committed upon the plaintiffs there can be no doubt under the findings of the court in this case. No question arises in this case in that respect.

It is manifest that if there is to be any security of transactions in the business world, the rule which allows fraud to be established by mere inadequacy of consideration, unaccompanied by other inequitable incidents, must in the very nature of things be restricted and when applicable be applied with great caution. No doubt a great many persons looking backward easily reach the conclusion that the price which they paid was greatly disproportionate to the value of the thing received. If every transaction in which such circumstances exist may be set aside whenever the buyer deems himself aggrieved, there are comparatively few business transactions which would not be subject to attack. Under such circumstances the rights of parties would depend upon the ideas which might subsequently be entertained by the court or jury as to the value of the property and things exchanged. This court has gone a long way in affording persons defrauded an adequate remedy both at law and in equity. The present case is one that appeals very strongly to the conscience of a chancellor. It would, however, be difficult to find a case which was more free from inequitable consideration outside of inadequacy of price than is the present case.

The conclusion which we have reached does not deny the plaintiffs a remedy. Skala was an agent selected by them, representing them in the transaction. If by reason of Skala's fraud and wrongdoing they have sustained a loss, as they undoubtedly have, their remedy is against Skala and, under the finding of the trial court, against Pudelka. The fact that

this remedy may or may not be efficacious so far as restoring their property is concerned, does not warrant fastening liability upon the defendant bank, which was concededly innocent of any wrongdoing. Neither the defendant bank nor its cashier, Von Berg, had such knowledge of Skala's wrongdoing as to make the bank liable on the ground of retention of benefits. The bank parted with good and valuable consideration, dealing with the plaintiffs at arm's length, and while the consideration may be inadequate, under all of the authorities that alone affords the plaintiffs no ground for relief.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint.

FOWLER, J. (*dissenting*). The case is in equity for rescission of an executed contract for exchange of lands. It is and long has been an accepted branch of equity jurisdiction to grant relief of rescission for inadequacy of consideration when such inadequacy is so gross as to shock the conscience of the court and furnish satisfactory and decisive evidence of fraud. The basis of the relief in such case is fraud. 2 Pomeroy, Eq. Jur. (4th ed.) p. 1939, § 927. It is true that if there is nothing but mere inadequacy of consideration the case must be extreme in order to justify relief, but where the inadequacy is accompanied by other inequitable incidents the relief is readily granted. 2 id. p. 1940, § 928. It is just as correct to say that where the parties stand on equal footing and each acts knowingly and intentionally, mere inadequacy of consideration, unaccompanied by other inequitable incidents, is not a sufficient ground for granting the relief. 2 id. p. 1935, § 926. But there is a clear distinction between the situations wherein equity does and does not exercise its jurisdiction, and it is ordinarily not difficult to decide which side of the line a given case falls and it is not difficult in the instant case. The mere statement of these principles justifies them and renders the citation of adju-

dicated cases to support them entirely unnecessary. A multitude of cases is cited in the text of Pomeroy in their support. Among these is *Graffam v. Burgess,* 117 U. S. 181, 6 Sup. Ct. 686. It is there said (pp. 191, 192) :

"The rule has become almost universal that a sale will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness."

And the conclusion from the authorities there cited is drawn—

. . . "that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason misled or surprised, then the sale will be regarded as fraudulent and void. . . . Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

The rule relied on in support of the judgment of the trial court is stated in 10 Ruling Case Law, p. 328, as follows :

"Mere inadequacy of price, or rather inequality in the bargain, is not, *per se,* a ground to avoid a bargain, in equity, but equity will interfere if the inadequacy is such as to demonstrate some gross imposition, or undue influence, or, to use an expressive phrase, shock the conscience."

In the case of *Hough's Adm'rs v. Hunt,* 2 Ohio, 506, a transaction was rescinded where the plaintiff, who was in necessity of procuring a loan of $2,000, applied to the defendant, and in order to procure the money was induced to purchase a tract of land at twice its value and give a mortgage thereon and his other land for the purchase price and the amount of the loan. In a note to this case in 15 Am. Dec. 569, the rule is stated as follows :

"It is well settled, both in England and in this country, that mere inadequacy of price, or any other inequality in

the bargain, is not *per se* a ground of rescission unless the inadequacy is so manifestly gross that a court of equity will infer from that fact alone that there was imposition or oppression in the transaction amounting to evidence of fraud."

The note quotes from *Juzan v. Toulmin,* 9 Ala. 662:

"Where, however, the inadequacy is such as to demonstrate some gross imposition or undue influence, or, to use an expressive phrase, shock the conscience, and amount in itself to conclusive and decisive evidence of fraud, equity ought to interfere. And gross inadequacy of price, when connected with suspicious circumstances, or peculiar relations between the parties, affords a vehement presumption of fraud."

The rule is thus stated in *Eyre v. Potter,* 15 How. (56 U. S.) 42, 60:

"There may be such an unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition or some undue influence; and in such cases courts of equity ought to interfere, upon satisfactory ground of fraud; but then, such unconscionableness or such inadequacy should be made out as would, to use an expressive phrase, shock the conscience and amount in itself to conclusive and decisive evidence of fraud."

In *Marker v. Van Gerpen,* 39 S. Dak. 648, 166 N. W. 151, 153, decided in 1918, it is stated:

"The decision of the trial court could rest alone, without the consideration of any other fact found, upon the rule of law that, while mere inadequacy of consideration or inequality in a bargain is not, *per se,* a ground for rescission thereof, equity will grant relief if the inadequacy is such as to demonstrate a gross imposition—in other words, is such as to shock the conscience of the court."

The rule is distinctly a rule of equity jurisprudence. Equity jurisdiction arose to avoid the rigor of the rules of the common law. The prayer of the conventional bill in equity began with the clause: "For as much, therefore, as

your orator is without remedy by the strict rules of the
common law." Much of the apparent differences in the de-
cisions respecting relief for inadequacy of consideration
arises from the fact that some of the cases are at law and
others are in equity. While it is true that under the Code
there is only one form of civil action, the different remedies
still obtain formerly administered at law and in equity and
the rules applied in the two jurisdictions are still applicable.

Considering this action as one formerly cognizable in
equity and applying the rules applicable to the equitable
action for rescission, the propriety of the application of the
remedy of rescission is apparent.

We have here a great deal more than mere inadequacy of
consideration. The parties here did not stand upon an equal
footing. The bank, or its representative, knew the value
of the farm lands which it exchanged. The plaintiffs did
not know and were not in a position to know or judge of the
value of these lands. In forming their judgment they relied
on the false and fraudulent representations of others, who
were their own agents, it is true, and of whose representa-
tions it does not appear the representatives of the bank had
actual knowledge. But the bank representative did have
notice of facts which should have made and doubtless did
make him aware that the plaintiffs were placing a highly
exaggerated valuation upon the farm property, and must at
least have suspected that representations as to that value had
been made by the plaintiffs' faithless agent, actuated thereto
by his own selfish interest through the commission he was
to receive from the plaintiffs in case an exchange should be
effected. The defendant by paying to this agent $500 to
apply as part payment of his commission aided him in his
perpetration of the fraud upon the plaintiffs. The trial court
found, accepting the highest value placed by the witnesses
on the farm property and the lowest value placed upon the
city property, that the equity in the farm property was

$3,000 and that in the city property was $14,229. Surely this difference, the inadequacy of the consideration received by the plaintiffs, was so gross as to shock the conscience of anybody who has a conscience. The bank, it is true, did not know the value of the city property was as great as testified to by the witnesses upon the trial, but it had the property appraised by an appraiser of a local building and loan association, who presumably placed his appraisal upon a conservative basis, and this appraisal valued the equity in the Chicago property at about $7,500. This was two and a half times the highest value placed by any witness upon the farm property, and was notice to the bank that it was taking advantage of the plaintiffs' ignorance and simplicity. Under the Roman law and civil law by arbitrary rule a price less than one-half the value, where a gift or bounty was not intended, entitled the buyer as matter of right to rescission or payment of the difference between the fair value and the price paid. 2 Pomeroy, Eq. Jur. (4th ed.) p. 1942. No arbitrary rule exists under our legal system, but the arbitrary rule under the civil law illustrates that, on purely ethical principles, inadequacy of consideration to the extent stated, in and of itself, by common understanding, renders a transaction unconscionable. Such difference in the *Hough Case, supra,* was considered sufficient, with other facts not more persuasive than those here present, to entitle the plaintiff to rescission. The defendant bank under the situation involved, in retaining the benefits accruing to it from the transaction after it had knowledge of the fraud perpetrated by plaintiffs' agent, must in common honesty be held to have adopted the conduct of plaintiffs' agent in perpetrating that fraud. As matter of principle, in seeking to avail itself of the agent's fraud for its own benefit, the defendant makes the agent's acts its own and the agent's fraud its own, just as much as it would have done had the agent been its own. That the person making the fraudulent representations was

the agent of the plaintiffs made them, not for the benefit of the defendant but for the purpose of benefiting himself through receipt of the commission he would receive for making the sale, does not save the transaction. *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837. It may be conceded, without affecting the propriety of the relief granted in this case, that standing alone fraudulent representations inducing a sale made by one not an agent of the seller, where the seller does not know that they were made, does not void the sale, for here we have much more than that, and enough to bring the case within the rule of equity stated. It may be said further that, notwithstanding the absence of a finding of the trial judge that the cashier knew of the fraudulent representations, he expressly found that "the bank knew or ought to have known that Skala and Pudelka as agents and advisors of the plaintiffs had been unfaithful to their trusts." In actions at law to recover damages for fraud it has long been the rule of this court that a defendant is as responsible for what he ought to have known as for what he actually knew. It would be strange indeed if one should be held to a less strict rule in equity than at law.

The well recognized general principles of equity jurisprudence above stated seem to me to require affirmance of the judgment of the trial court. We have a case of an utterly unconscionable inadequacy of consideration coupled with such other inequitable incidents as to compel the equitable relief of rescission. The parties were not dealing on an equal basis. The plaintiffs were utterly ignorant of farms and farm land values. They were simple and gullible people. The mother was unable to speak or understand English. The bank's representative knew the value of its farm and refrained from correcting plaintiffs in that respect although he must have known they were placing an exagger-

ated value upon it. The defendant bank not only paid the faithless agent of the plaintiffs $500 of the commission the plaintiffs had agreed to pay him, but so nearly stripped the plaintiffs that they were able to pay only $200 of the remaining $500. The bank took a chattel mortgage back on the personal property sold, well knowing, as it must have known, that the plaintiffs would never be able to work out from under the chattel mortgage and the mortgage against the farm, and that the deal would ultimately result in making them penniless and burdened with debt besides. This was oppression. That the cashier of the bank knew he had cheated the plaintiffs may well be inferred from his lulling the plaintiffs into the belief that he would take up with others interested in the bank the matter of deeding back the mother's property and giving the son a smaller farm in exchange for the one conveyed to him. The cashier represented to the plaintiffs that the farm conveyed to them was a good farm and would produce good crops, while the evidence shows the fact to be otherwise. These facts, in addition to the gross inadequacy of consideration, seem to me to compel the inference of fraud. From the statement in the majority opinion referring to, the Restatement of the Law of Agency, I infer that had the representations made by Skala and Pudelka been made by one who represented that he was the agent of the bank, although he was not, and the bank had known nothing of the representations before closing the deal but had learned of them thereafter and attempted to hold its ill-gotten gains after so learning, this would constitute a fraud entitling the plaintiffs to rescission. I am unable to perceive any reason which renders the case stated a fraud but exempts the instant case. The plaintiffs had less cause to suspect the falseness of the statements of their own agents than they would have had to suspect those of one believed to be the agent of the defendant bank. If the courts have

heretofore so drawn the line, it seems to me that this court, in the interest of honesty and fair dealing, should not hesitate to step beyond it to include the instant case and others like it. Reason exists for granting relief in this case at least equal to that which exists in the other. The doctrine "Let the buyer beware" of course still obtains, although the rigor of the ancient rule is much relaxed, but alongside it should be laid another to be applied as rigidly as the former—"Let the seller beware also."

I think the judgment of the circuit court should be affirmed.

I am authorized to state that Mr. Justice WICKHEM joins me in this dissent.